**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:26-cv-21108-GAYLES**

**JOSE CARLOS GONZALEZ PEREDA,**

      **Petitioner**,

**v.**

**KROME NORTH SERVICE**
**PROCESSING CENTER, et al.,**

      **Respondents.**

                                         /

## <u>ORDER</u>

**THIS CAUSE** comes before the Court on Petitioner Jose Carlos Gonzalez Pereda's *pro se* Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 12] (the "Amended Petition"). Petitioner challenges his detention at Krome North Service Processing Center ("Krome") in Miami without being afforded an individualized bond determination. *See generally id*. In accordance with 28 U.S.C. § 2243, the Court issued an Order directing Respondents—Krome, the U.S. Department of Homeland Security (DHS), U.S. Immigration Customs and Enforcement (ICE), and the "Warden" of Krome—to show cause why the Petition should not be granted. *See* [ECF No. 13].

Respondent Charles Parra, Assistant Field Office Director at Krome,[1] filed a response to

---

[1] As Respondents explain, a writ of habeas corpus must "be directed to the person having custody of the person detained." 28 U.S.C. § 2243; [ECF No. 18 at 1 n.1]. And in "challenges to present physical confinement," the Supreme Court has made clear that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004); *see also id.* at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."). Accordingly, the Court will substitute the immediate custodian of Krome, Assistant Field Office Director Charles Parra, in his official capacity as Respondent here and will dismiss all other named Respondents. *See* [ECF No. 18 1 n.1]; *Jackson v. Chatman*, 589 F. App'x 490, 491 n.1 (11th Cir. 2014); *Barghouthi v. Field Office Director*, No. 25-25666-CIV, 2026 WL 1040943, at \*2 (S.D. Fla. Apr. 17,

the Court's show cause Order on April 17, 2026 [ECF No. 18] (the "Response"). Petitioner filed his reply on April 21, 2026 [ECF No. 19] (the "Reply"), so the Petition is now ripe for review. The Court has considered the Petition, the Response, the record, and applicable law. For the following reasons, the Petition is **GRANTED in part**.

I.      BACKGROUND

A.      **Petitioner's Immigration History in the United States**

Petitioner is a native and citizen of Cuba. [ECF No. 18-1 at 3]. Neither the Petition nor the Response explains the circumstances of Petitioner's arrival in the United States, *see generally* [ECF No. 12]; [ECF No. 18], but attachments to the Response indicate that Petitioner was admitted in February 2021 at a New York airport on a B2 Tourist Visa, *see* [ECF No. 18-1 at 3]. The Tourist Visa permitted Petitioner to stay in the country for up to four months, but Petitioner "overstayed his admission period and failed to depart." *See id.*

In March 2022, the U.S. Border Patrol "apprehended" Petitioner in Arizona near the United States-Mexico border. *See id.* During that encounter, the DHS issued Petitioner several immigration documents: (1) a Warrant for Arrest (Form I-200) indicating that Petitioner had "entered the United States at or near San Luis, Arizona on March 16, 2022" and was in violation of immigration laws; (2) a Notice to Appear (Form I-862) before an Immigration Judge for a January 30, 2024 hearing to show why Petitioner should not be removed from the United States; (3) a Notice of Custody Determination (Form I-286) indicating that it was releasing Petitioner on his own recognizance instead of detaining him; and (4) an Order of Release on Recognizance (Form I-220A) requiring Petitioner to comply with several conditions, including that he report in

2026) ("[B]ecause Petitioner is detained at Krome, his immediate custodian is acting Assistant Field Office Director Charles Parra. Accordingly, the only proper respondent to this case is Parra in his official capacity. . . . The Court therefore substitutes Assistant Field Office Director Charles Parra as the sole respondent to this action. All other named respondents are dismissed.").

person to an ICE officer. *See* [ECF No. 12-1 at 17–21]. The Order of Release noted Petitioner was not "authorized for employment," *id.* at 19; but in April 2023, U.S. Citizenship and Immigration Services (USCIS) approved Petitioner's Application for Employment Authorization (Form I-765), authorizing him to work through March 2025, *see* [ECF No. 18-1 at 3].[2]

In May 2023, Petitioner submitted an Application to Register Permanent Residence or Adjust Status (Form I-465) seeking to become a Legal Permanent Resident, which as of September 2025 was still pending. *See id.* And in December 2024, Petitioner's naturalized U.S. citizen wife submitted a Petition for Alien Relative (Form I-130) seeking to have Petitioner's status adjusted based on their November 2024 marriage. *See* [ECF No. 12-1 at 25–27].

On September 9, 2025, Petitioner was arrested in Escambia County, Florida for Operating a Motor Vehicle without a Valid Commercial License. *See* [ECF No. 18-1 at 2–3]. ICE's Miami Office issued an Immigration Detainer (Form I-247) for Petitioner on September 10, 2025 and arrested him on September 12, 2025. *See id.* Petitioner has been detained since that date, *see id.*, and is currently being held at Krome, *see* [ECF No. 12 at 1]. He has "requested bond hearings twice," in November 2025 and December 2025. *See id.* at 6; [ECF No. 12-1 at 51–54].

No action was taken on Petitioner's November 2025 custody redetermination request, *see* [ECF No. 12-1 at 53–54], but an Immigration Judge denied his December 2025 custody redetermination request, *see id.* at 51–52. Citing *Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025), the Immigration Judge found the Immigration "Court does not have jurisdiction over" Petitioner's "bond proceedings." *See id.* at 51. Petitioner did not appeal the denial to the Board of Immigration Appeals (BIA), finding it futile "based on the Court['s] reliance on" *Yajure Hurtado*. *See* [ECF No. 12 at 2–3]. Petitioner has not otherwise received a bond hearing and remains in ICE

---

[2] When his work authorization expired in March 2025, Petitioner submitted a new Application for Employment Authorization (Form I-765), which was pending when ICE detained him in September 2025. *See* [ECF No. 18-1 at 3].

custody at Krome. *See generally* [ECF No. 12]; [ECF No. 18]; [ECF No. 19].

### B. Petitioner's Habeas Petition and Respondent's Response

On April 7, 2026, Petitioner filed the operative Amended Petition, which challenges his prolonged detention on four grounds.[3] [ECF No. 12]. First, he asserts that procedural "defects" in his brief detention and ultimate release in March 2022 have "caused confusion" in his "legal status and have prolonged his detention." *See id.* at 6; [ECF No. 12-1 at 3–4]. Second, he asserts he has "been detained since September" 2025 "without a final order of removal" or a "meaningful opportunity to contest" his detention to challenge the "lawfulness of his confinement," which amounts to "indefinite detention" in violation of his due process rights. *See* [ECF No. 12 at 6]; [ECF No. 12-1 at 4–5]. Third, he asserts his "unreasonable" continued detention prevents him from supporting his wife, mother, and minor children, which has created "severe hardship" on his family. *See* [ECF No. 12 at 6]; [ECF No. 12-1 at 5]. Finally, he asserts he is "in active removal proceedings" and that his continued detention "imposes unnecessary hardship" and limits "his ability to participate in his defense." *See* [ECF No. 12 at 7]; [ECF No. 12-1 at 5–6]. He asks the Court to declare his detention unlawful and to order either his "immediate release under reasonable supervision" or an "immediate bond hearing where the Government must justify continued detention." *See* [ECF No. 12 at 7]; [ECF No. 12-1 at 6].

In his Response, Respondent notes that the outcome of the Amended Petition turns on a "dispositive question of law": "whether Petitioner's immigration detention is governed by" § 1225(b)(2) or § 1226(a) "and, relatedly, whether Petitioner is entitled to an individualized bond hearing before the immigration court." *See* [ECF No. 18 at 2]. Because it does, Respondent

---

[3] This case began on February 19, 2026, when Petitioner's wife filed a Petition for Writ of Habeas Corpus under § 2241 on his behalf. [ECF No. 1]. She twice amended that Petition in an attempt to explain how she qualified as his next friend, *see* [ECF No. 6]; [ECF No. 9], but the Court found she did not qualify and dismissed those amended petitions, *see* [ECF No. 10]. Petitioner then filed the Amended Petition on his own behalf. [ECF No. 12].

believes "the Court is positioned [to] rule . . . without individualized legal briefing" and submits a "truncated" brief instead of "a formal memorandum of law and fact." *See id.* at 2 n.2, 4. In his truncated brief, Respondent notes his position that "Petitioner is subject to detention under" § 1225(b)(2) "because he was encountered in the United States without being admitted or paroled, and therefore remains an 'applicant for admission' subject to mandatory detention, regardless of the length of time he has been present in the United States." *See id.* at 2. But Respondent acknowledges that this Court is among the "that district courts across the country" that have rejected that position. *See id.* at 3.

In his Reply, Petitioner reiterates his arguments about the procedural defects in his March 2022 detention and release, the violation of his due process rights, and family hardship. *See* [ECF No. 19]. He "disputes" that he was admitted in 2021 on a B2 Tourist Visa. *See id.* at 2. Finally, he notes Respondent's acknowledgement that this Court has rejected the argument that § 1225(b)(2) applies here and urges the Court to "follow its own precedent and grant relief." *See id.* at 1, 4.

## II.   LEGAL STANDARD

District courts may grant writs of habeas corpus if a person is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(a), (c)(3). Indeed, "[h]abeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Relevant here, the Supreme Court has reaffirmed "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to" immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). And courts in this District have held that this Court has jurisdiction over challenges involving whether a petitioner is detained subject to § 1225(b)(2) or to § 1226(a). *See, e.g.*, *Similien v. Warden, Fed. Det. Ctr., Miami*, No. 26-CV-21739, 2026 WL 900078, at *2 (S.D. Fla. Apr. 2, 2026); *Chamsadine v. Assistant Field Dir.*

*Warden*, No. 26-21487-CV, 2026 WL 746400, at *1 (S.D. Fla. Mar. 17, 2026).

Section 1225(b) governs the inspection of noncitizen applicants for admission. *See* 8 U.S.C. § 1225(b). An "applicant for admission" is an "alien present in the United States who has not been admitted or who arrives in the United States." *See id.* § 1225(a)(1). Detention for noncitizen applicants for admission under § 1225(b)(2) is mandatory. *See Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (noting § 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin"). For that reason, a noncitizen applicant for admission detained under § 1225(b)(2) is ineligible for bond. *See, e.g.*, *Carvajal Bautista v. U.S. Immigr. & Customs Enf't*, No. 1:26-CV-22191, 2026 WL 925590, at *2 (S.D. Fla. Apr. 6, 2026).

Section 1226, on the other hand, "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *See Jennings*, 583 U.S. at 289 (emphasis added). "Section 1226(a)'s default rule permits the Attorney General to issue warrants for the arrest and detention of these aliens pending the outcome of their removal proceedings." *Id.* at 281; *see also* 28 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."). "The Attorney General 'may release' these aliens on bond" unless they "fall[] into one of the enumerated categories" in § 1226(c) "involving criminal offenses and terrorist activities." *See Jennings*, 583 U.S. at 281 (quoting § 1226(a)(2)). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Id.* at 306; *see also* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

Put simply, § 1226(a) "establishes a discretionary detention framework," which is "unlike the mandatory detention framework of § 1225(b)(2)." *See Carvajal Bautista*, 2026 WL 925590, at *2 (quotation marks omitted); *Aguilar Merino v. Ripa*, No. 25-23845-CIV, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025). Congress explained the basis for these different detention frameworks when it determined in 1996 that "noncitizens already residing in the U.S." have "more substantial due process rights" than "noncitizens recently arriving." *See Aguilar Merino*, 2025 WL 2941609, at *3. In the thirty years since then, federal courts and agencies have uniformly held that § 1226(a) governs the detention of noncitizen residents, while § 1225(b)(2) applies to noncitizens arriving at an entry point. *See id.*

Indeed, even ICE's own agency, the DHS, interpreted the statutes this way until a July 2025 policy change. *See id.* Pursuant to the DHS's new policy, however, ICE has been instructed to treat noncitizen residents "in the same manner that 'arriving aliens' have historically been treated," which means mandatory detention and no eligibility for a bond hearing. *See id.* (quoting *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607 (July 8, 2025)); *Carvajal Bautista*, 2026 WL 925590, at *2. "Following this interpretation, the BIA held" that an Immigration Judge "had no authority to provide a bond hearing to a noncitizen" who "had been living in the United States for years without admission or parole" because he "is an applicant for admission under § 1225(b)(2)" and "subject to mandatory detention." *Carvajal Bautista*, 2026 WL 925590, at *2; *see also Yajure Hurtado*, 29 I. & N. Dec. at 228 (adopting DHS's new interpretation).

But "District Courts have overwhelmingly rejected the BIA's interpretation." *Carvajal Bautista*, 2026 WL 925590, at *2. That includes courts in this District, many of which have concluded that DHS's abrupt shift in interpretation "runs afoul of the statutes' legislative history,

plain meaning, and interpretation by courts in" six Circuits over the last three decades. *See, e.g.*, *Aguilar Merino*, 2025 WL 2941609, at \*3. Those courts have instead adhered to the interpretation supported by a "plain reading" of § 1225(b)(2) and § 1226(a), *see id.*, which is that the detention of noncitizens encountered when they are already living in the United States "is governed by § 1226(a) and not § 1252(b)(2)," *see Carvajal Bautista*, 2026 WL 925590, at \*3. *But see Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 506–08 (5th Cir. 2026) (adopting DHS's new interpretation); *Avila v. Bondi*, 170 F.4th 1128, 1137–38 (8th Cir. 2026) (same).

## III.    ANALYSIS

The core disagreement between Petitioner and Respondent is whether Petitioner is detained under § 1225(b)(2), and is thus ineligible for bond, or under § 1226(a), which allows for release on bond. This is a hotly contested question that is "currently dividing" courts "throughout the country." *See Rocha Vargas v. Miami Fed. Det. Ctr.*, No. 25-CV-25966-RAR, 2026 WL 911291, at \*1 (S.D. Fla. Apr. 2, 2026). This Court, however, has already answered it: noncitizens who have "been living in the United States" for years before being detained are "governed by § 1226(a) and not § 1252(b)(2)." *See, e.g.*, *Carvajal Bautista*, 2026 WL 925590, at \*3. Those noncitizens are "therefore entitled to a bond hearing." *See id.*

The Court sees no reason to depart from that holding here.[4] Respondent detained Petitioner, who has lived in the United States since at least 2022, after he had an encounter with state law enforcement in Escambia County, not at the border or the port. *See* [ECF No. 18-1 at 2–3]. That

---

[4] The Court acknowledges the recent decisions by the Fifth and Eighth Circuits that agreed with Respondent's position. *See Buenrostro-Mendez*, 166 F.4th at 506–08; *Avila*, 170 F.4th at 1137–38. Of course, those decisions are "not binding here, and" they "contradict[] the vast majority of district court opinions addressing the issue." *Lobovillalobos v. Hardin*, No. 2:26-cv-00446, 2026 WL 621380, at \*2 n.1 (M.D. Fla. Mar. 5, 2026); *see also Buenrostro-Mendez*, 166 F.4th at 509 (Douglas, J., dissenting) (criticizing the decision as "totally unsupported"). Therefore, they do not persuade this Court. Similarly, Respondent notes that the government has appealed two decisions from this District that have reached the same conclusion. *See* [ECF No. 18 at 3–4]. The Eleventh Circuit has not yet decided those appeals, so the Court's *Carvajal Bautista* decision remains good law.

makes Petitioner a noncitizen resident, not an arriving alien or an applicant for admission. As a result, the Petition is governed by § 1226(a) not § 1225(b)(2), and Petitioner is entitled to a bond hearing under § 1226(a).

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED:**

1.    Petitioner Jose Carlos Gonzalez Pereda's *pro se* Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 12] is **GRANTED in part**. The Court finds that Petitioner's detention falls under 8 U.S.C. § 1226(a).

2.    Respondent shall afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) on or before **May 7, 2026** or otherwise release Petitioner.

3.    On or before **May 11, 2026**, Respondent shall file a Status Report informing the Court of whether Petitioner was given a bond hearing, the outcome of Petitioner's bond hearing, and the status of matters relevant to the Petition.

4.    The Clerk **SHALL SUBSTITUTE** the immediate custodian of Krome, Assistant Field Office Director Charles Parra in his official capacity, as Respondent in this case and **SHALL TERMINATE** all other named Respondents. *See* 28 U.S.C. § 2243; *Rumsfeld*, 542 U.S. at 439, 447; *Jackson*, 589 F. App'x at 491 n.1; *Barghouthi*, 2026 WL 1040943, at *2.

5.    This case is **CLOSED** for administrative purposes.

6.    The Court retains jurisdiction to address matters that may arise with respect to the Petition, and either party may file a motion to reopen the case should any additional relief be sought relating to the Petition or this Order.

7.      The Clerk **SHALL MAIL** a copy of this Order to Petitioner.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24th day of April, 2026.

_____

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

Cc:

**Jose Carlos Gonzalez Pereda**
A# 220845852
Krome North Service Processing Center
Inmate Mail/Parcels
18201 SW 12th Street
Miami, FL 33194
*PRO SE*

**Noticing 2241/Bivens US Attorney**
Email: usafls-2255@usdoj.gov

**Noticing INS Attorney**
Email: usafls-immigration@usdoj.gov

**John Steven Leinicke**
**Benjamin Sardinas**
**Carolina Perez Schmerold**
United States Attorney's Office, Civil
99 N.E. 4th Street
Miami, FL 33132
Email: john.leinicke@usdoj.gov
Email: Benjamin.Sardinas@usdoj.gov
Email: carolina.perez@usdoj.gov